IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA,

v.                                                  Criminal Action No. 3:13-cr-00042

SHUOWEN XING,

            Defendant.

## MEMORANDUM OPINION

This matter comes before the Court on the defendant's motion to dismiss the indictment against him. (Dkt. no. 15.) The indictment charges Shuowen Xing with two counts of Receipt of Child Pornography, and one count of Distribution of Child Pornography. Xing argues that unique circumstances warrant dismissal of all pending charges in this Court (the "Federal Case").

On February 8, 2013, Xing pled guilty to unrelated sex crimes in a Virginia state court and received a twelve-year prison sentence (the "State Case"). Xing seeks dismissal of the Federal Case based on allegedly ineffective assistance of counsel he received during guilty plea negotiations in the State Case. This Court has held an evidentiary hearing on the motion.

For a number of reasons, the Court denies Xing's motion to dismiss. *First*, the motion is procedurally improper. Defendants may only raise ineffective assistance of counsel claims in certain circumstances, none of which applies in this case. *Second*, Xing's motion fails because his Sixth Amendment right to counsel in the Federal Case did not attach at the time his counsel provided allegedly constitutionally defective legal advice in the State Case. To dismiss a federal indictment based on poor legal advice rendered in connection with unrelated state-law charges would deprive the United States of its ability to punish wrongdoers who violate the federal government's independent laws. *Finally*, on the merits, Xing's counsel did not provide deficient

legal advice in connection with Xing's guilty plea in state court. Accordingly, the Court DENIES Xing's motion to dismiss.

## I. FACTUAL BACKGROUND

On November 2, 2010, an FBI agent accessed a peer-to-peer file sharing network and downloaded child pornography images from Xing's shared electronic computer folders. Agents searched Xing's residence in December 2010, and seized Xing's computers and computer-related equipment. Xing was not taken into custody at that time or charged with any crimes. He agreed to cooperate with state and federal law enforcement officers.

While still under investigation by the United States, the Commonwealth of Virginia charged Xing with six (6) counts of aggravated sexual battery and six (6) counts of forcible sodomy of a nine-year-old boy in Powhatan County, Virginia. According to the State Case indictment, Xing molested the young boy between November 1, 2011 and May 3, 2012. (Joint Ex. 2.)[1] Xing was arrested in the State Case on May 10, 2012. Xing retained Taylor Stone ("Stone") to represent him in the State Case, but not with respect to the ongoing federal investigation. (July 18, 2013 Hr'g Tr. ("Tr.") 58, 69, 94, 112.)[2]

A. *The Twenty-Year Offer.*

Stone knew about the pending federal investigation, and attempted to negotiate (on Xing's behalf and with Xing's permission) a global resolution of the State Case and any potential

---

[1] Although each exhibit is marked "Government Exhibit __," the parties agreed to submit the documents to the Court as joint exhibits. Accordingly, the Court will refer to a particular exhibit as "Joint Ex. __."

[2] Xing retained different counsel to assist in the defense of the child pornography investigation. (Tr. 67-68; Joint Ex. 1.) After Xing was indicted in the Federal Case, the Court appointed Stone to serve as Xing's counsel. He promptly withdrew for obvious reasons. The Court then appointed Xing's current counsel, Charles Gavin, who did not participate in any of the events giving rise to the instant motion.

2

federal charges. In the summer of 2012, the Special Assistant United States Attorney ("SAUSA") assigned to the ongoing federal investigation contacted the Assistant Commonwealth's Attorney ("ACA") in the State Case and "floated the idea" of a global resolution. (Tr. 50-51.) The SAUSA told the ACA that if Xing pled guilty in the State Case and agreed to an active prison term of twenty (20) years, the United States would not pursue federal child pornography charges against Xing. The ACA conveyed this proposal to Stone who, in turn, communicated the offer to Xing. All parties agree that the particulars of the plea deal were not discussed, and nothing was reduced to writing. (Tr. 32-34, 51, 55-56.) Stone told Xing that if he rejected the twenty-year offer, the ACA would "definitely" *nolle prosequi* the State Case because of the ACA's reluctance to subject the young victim to a full blown trial. (Tr. 62-63.) However, in the event the case *were nolle prossed*, the federal government would prosecute Xing for possessing and distributing child pornography.[3]

Xing rejected the twenty-year offer because he did not believe himself guilty of the charges pending in the State Case. (Tr. 20, 70.) Indeed, on August 29, 2012, Xing wrote to Stone saying he would not accept a plea in the State Case "no matter what. Not for anything. . . . They have to bring on the trial!! At this point, I have no intention to plea." (Joint Ex. 3.) Stone communicated Xing's intentions to the ACA, and told Xing that the ACA would seek a jury trial in the State Case. (Joint Ex. 4.)

---

[3] Under Virginia law, a *nolle prosequi* terminates the prosecution and leaves the situation "the same as if the Commonwealth had chosen to make no charge" at all. *Wright v. Commonwealth*, 667 S.E.2d 787, 792 (Va. Ct. App. 2008) (*en banc*). Put another way, once a *nolle prosequi* has been entered, "the slate is wiped clean," as if the charges "had never existed." *Kenyon v. Commonwealth*, 561 S.E.2d 17, 20-21 (Va. Ct. App. 2002). Thereafter, the prosecution may proceed for the same offense, but a new indictment is required. *Miller v. Commonwealth*, 234 S.E.2d 269, 273 (Va. 1977).

3

The ACA was, in fact, concerned about the effect testifying in the State Case could have on the young victim. Prior to Xing's preliminary hearing, the ACA told Stone that if Xing intended to go to trial in the State Case, the Commonwealth would *nolle prosequi* the State Case, clearing the way for the United States to pursue child pornography offenses against Xing in federal court. The ACA also said she would consider re-indicting Xing in the State Case once the federal case concluded, and once "the little boy got older and wanted to pursue testifying" against Xing. (Tr. 21, 98.) Accordingly, in an effort to delay federal prosecution of the child pornography offenses and to keep alive the possibility of a global resolution, Xing waived his preliminary hearing in the State Case. Trial was scheduled for February 8, 2013.

*B. The Eighteen-Year Offer.*

In the fall of 2012, the ACA (with the SAUSA's approval) proposed to Stone that if Xing pled guilty in the State Case and agreed to an active sentence of eighteen (18) years, the United States would forego prosecution of the federal charges. Again, no additional terms concerning a purported plea deal were raised or discussed. Stone presented the offer to Xing. Stone warned Xing that failure to accept the ACA's offer could result in federal prosecution for the child pornography allegations. Indeed, Stone told Xing that if he did not accept the ACA's offer, the Commonwealth would *nolle prosse* the State Case and turn Xing over to federal prosecutors to initiate child pornography charges. (Joint Ex. 5.)

Stone reiterated these concerns in a November 9, 2012, letter to Xing. There, Stone repeated that prosecutors had offered a "potential global resolution" of the State Case and federal child pornography matter requiring Xing to accept an eighteen-year prison term. (Joint Ex. 6 at 2.) If Xing accepted the proposal, he would not be prosecuted in federal court on the child pornography charges. (*Id.*) If Xing did not accept the ACA's offer, however, the ACA would

4

"most likely" drop the State Case and turn Xing over to federal prosecutors. (*Id.*) Even if the State Case were *nolle prossed*, however, Stone warned Xing that the ACA might reinstitute the State Case if "at any time [the alleged victim] would like the charges brought back[.]" (*Id.*) "Therefore," Stone said, "having the [State] charges dropped *does not mean* that you will never be prosecuted for these alleged offenses." (*Id.* 2-3 (emphasis added).)[4] Indeed, Stone always made clear to Xing that "if [the ACA] ever wanted to bring the charges back, they were coming back." (Tr. 98.) Stone even informed Xing that, if the State Case proceeded to trial, the federal government would still prosecute Xing for child pornography. (Joint Ex. 6 at 3.)

On January 10, 2013, the ACA particularized the details of the offer: Xing would plead guilty to two (2) counts in the State Case and accept an eighteen-year term of active imprisonment. (Joint Ex. 7.) The ACA told Stone that the offer would terminate on January 15, 2013. (Tr. 23, 37.) That same day, Stone conveyed the proposal to Xing in person. On January 11, Stone wrote to Xing advising that if he accepted the plea offer, he would not be prosecuted federally. (Joint Ex. 7.) The ACA also told Stone that if Xing did not accept the offer, the State Case would likely be *nolle prossed* so that the federal charges could proceed. (Tr. 23, 114.) The ACA reiterated, however, that any decision to *nolle prosse* would be "subject to discussing it with the family." (Tr. 24.) Once again, Xing maintained his innocence and rejected the plea deal. (Tr. 37, 106.) In his words, "I can't see myself doing 18 years for something I didn't do." (Joint Ex. 8.)

---

[4] According to Xing, Stone advised him that, if he rejected the plea deal, the state charges were "never going to come back." (Tr. 65, 74; *see also* Def.'s Mem. Supp. Mot. Dismiss 3.) The Court will not credit Xing's testimony because Stone's correspondence flatly belies Xing's contention.

5

*C. Xing Pleads Guilty and Receives a Twelve-Year Sentence.*

Between January 15, 2013 and the start of Xing's trial date in early February, the ACA continued to evaluate the State Case and discuss it with the victim's family. This evaluation and discussion led the ACA to the following conclusions: (1) the victim and his family wanted the Commonwealth to proceed to trial; (2) there was a risk that Xing would argue a speedy trial violation if the Commonwealth attempted a *nolle prosse* in the State Case; and (3) the Commonwealth believed it had a "good trier of fact" in the judge assigned to the State Case. (Tr. 25-26; 38-41.) Given all of these circumstances, the ACA decided to take Xing's State Case to trial. No further discussions about a potential global resolution occurred. (*Id.* 27, 57.)

Two days before his scheduled trial in the State Case, Stone told Xing that the ACA "had reversed her previously proposed course of action to *nolle prosequi*, and was now planning on moving forward with the trial against Xing[.]" (Def.'s Mem. Supp. Mot. Dismiss 3; *see also* Gov't Opp'n 7-8.) According to Xing, Stone had never advised him about a scenario where the ACA chose to prosecute Xing to verdict rather than obtaining a *nolle prosequi*, (Tr. 64-65), and Xing instructed Stone to negotiate the best deal possible.

On February 8, 2013, recognizing that he was going to face either a stiff sentencing judge or an unsympathetic jury, Xing pled guilty to four (4) counts of aggravated sexual battery and one (1) count of forcible sodomy in the State Case and received a twelve-year prison sentence. (Joint Ex. 10; Tr. 86.) The plea agreement does not refer to the pending federal charges, and makes no assurance regarding their disposition. (Joint Ex. 10.) Xing agreed during his plea colloquy in the State Case that no promises or assurances had been made to him other than what was contained in the plea agreement. (Joint Ex. 11 at 23.) Indeed, when he pled guilty, Xing never said a word about his expectations concerning the pending federal charges. (Tr. 86-88.)

6

Xing also conceded that he had discussed with Stone the potential maximum punishments he could face if he took the State Case to trial and was convicted. (Joint Ex. 11 at 18.)

### D. *The United States Files a Criminal Complaint Against Xing Regarding the Possession and Distribution of Child Pornography.*

On January 30, 2013, the United States filed a criminal complaint against Xing. On February 19, 2013, Xing was indicted in the Federal Case. Federal prosecutors have told Xing's current counsel that they will seek a sentence in the Federal Case to run *consecutive* to the 12-year State sentence. (Def.'s Mem. 4.) Xing alleges that Stone told him that if he rejected the State deal, he would only face a maximum sentence of 20 years in the Federal Case. (*Id.* 3.)

Xing intends to plead guilty and accept responsibility in the Federal Case, but has filed the instant motion in an effort "to be placed back in the position he would have been in" had he known that "rejection of the [S]tate 18-year deal would result in his continuing prosecution" in the State Case. (Def.'s Mem. 4.) In other words, Xing argues that Stone should have confirmed with the State prosecutor that she would, in fact, *nolle prosequi* the State Case if Xing rejected the global plea offer. (*Id.* 5.) Had Stone advised Xing of the possibility that the State prosecutor would move forward on the State Case, he now says that he "would have undoubtedly accepted the 18 year deal." (*Id.*)

## II. ANALYSIS

### 1. Xing's Ineffective Assistance of Counsel Claim is Premature.

At bottom, Xing argues that Stone rendered ineffective assistance of counsel prior to Xing's guilty plea in the State Case. According to Fourth Circuit precedent, a defendant may raise an ineffective assistance of counsel claim as follows: (1) in a motion for a new trial, filed within fourteen days of the verdict pursuant to Fed. R. Crim. P. 33, based on anything other than newly discovered evidence; (2) on direct appeal where it conclusively appears from the record

that his counsel did not provide effective assistance; or (3) in this Court by a collateral challenge pursuant to 28 U.S.C. § 2255. *United States v. Martinez*, 136 F.3d 972, 979 (4th Cir. 1998) (citing *United States v. Smith*, 62 F.3d 641, 650-51 (4th Cir. 1995)). Xing's motion does not pertain to a previous trial held in this Court, is not being asserted on appeal, and does not collaterally attack a sentence under §2255.[5] Accordingly, Xing's motion to dismiss is improper.

Relying on the Sixth Circuit's decision in *United States v. Morris*, 470 F.3d 596 (6th Cir. 2006), Xing argues that dismissing a federal indictment is an appropriate remedy to cure deficient legal representation provided to a defendant in a related state-court criminal proceeding. In *Morris*, the state charged the defendant with firearm and drug-related offenses. The state offered Morris one-to-four years on the drug charge, and two years (to run consecutive) on the firearm count. *Id.* at 598. The offer also included an agreement that Morris would not be prosecuted in federal court. Morris rejected the state court plea offer in large part because his attorney, who was inexperienced in federal practice, had been misinformed by the AUSA (through the state prosecutor) of the sentencing guidelines range he would face in federal court. *Id.* at 598-99. The state court defense attorney had also just received the defendant's case, had not received complete discovery, and had inadequate opportunity to consult with her client during plea negotiations. *Id.* at 599. The court held that under these circumstances, dismissal of the federal indictment was an appropriate remedy: "Dismissal of the federal indictment was within the district court's authority to put Morris back in the position he would have been in but for the denial of his right to counsel in light of the federal prosecutor's entanglement with the state plea process." *Id.* at 600-01. Of course, as a Sixth Circuit Case, *Morris* does not bind this Court. In any event, *Morris* is distinguishable for several reasons.

---

[5] Xing recognizes that he could pursue his ineffective assistance of counsel claim in state court via habeas review. (Def.'s Mem. 6.)

8

First, *Morris* addressed an ineffective assistance of counsel claim outside the confines of the three situations identified by the Fourth Circuit in *Martinez*. Hence, the Court has no reason to believe the Fourth Circuit would follow *Morris* if presented with a similar fact pattern.

Second, the Sixth Circuit never addressed whether Morris's Sixth Amendment right to counsel attached to his federal charges. Although Morris received ineffective assistance with respect to his state charges, his Sixth Amendment right to counsel concerning the federal charges had not attached when he received deficient representation. *See Moran v. Burbine*, 475 U.S. 412, 431 (1986) (right to counsel attaches only after the commencement of formal charges against a defendant). Many courts of appeals, including the Fourth Circuit, hold the dual sovereignty doctrine forecloses the simultaneous attachment of a defendant's Sixth Amendment right to counsel to essentially identical state and federal charges. *See, e.g., United States v. Burgest*, 519 F.3d 1307, 1311 (11th Cir. 2008) ("[a] federal offense and a state offense do not constitute the 'same offense' under the Sixth Amendment – even if the offenses are identical in their respective elements - because they are the violations of the laws of two separate sovereigns."); *United States v. Alvarado*, 440 F.3d 191, 193 (4th Cir. 2006) (holding "federal and state crimes are necessarily separate offenses for the purposes of the Sixth Amendment[.]"); *United States v. Coker*, 433 F.3d 39, 44 (1st Cir. 2005) (same); *United States v. Avants*, 278 F.3d 510, 512-13, 518 (5th Cir. 2002) (Even where the elements of the two charges were "virtually identical," the federal and state murder charges could not be considered the same offense, and Avants's Sixth Amendment right to counsel attached only to the state charge at the time of the FBI questioning on the federal charge). This important issue went unaddressed in *Morris*.

Third, the state and federal charges at issue in *Morris* all arose from the same underlying conduct. Here, by contrast, Xing's state child molestation conviction is wholly unrelated to his

9

pending federal child pornography charges. The elements required to prove the crimes of aggravated sexual battery and sodomy differ from those necessary to convict a defendant of receipt and distribution of child pornography. In this sense, dismissing Xing's federal child pornography charges – charges wholly unrelated to the child molestation offenses to which Xing pled guilty in the State Case – would eviscerate the ability of the federal government to punish wrongdoers for violations of the United States' own, independent laws. *See Moore v. Illinois*, 55 U.S. (14 How.) 13, 20 (1852) ("Every citizen of the United States is also a citizen of a State or territory. He may be said to owe allegiance to two sovereigns, and may be liable to punishment for an infraction of the laws of either."). Dismissal would render the enforcement of federal criminal laws largely dependent on the particular legal advice a defendant received concerning unrelated state-law charges. But the United States is not liable for a state-defendant's lawyer's mistakes, and the Court cannot countenance such an affront to our federal design. After all, crime is "an offense against the sovereignty of the government," *Heath v. Alabama*, 474 U.S. 82, 88 (1985), and "the power of punishment appertains to sovereignty, and may be exercised, whenever the sovereign has a right to act, as incidental to his constitutional powers," *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 418 (1819).

*Finally*, we cannot forget that Xing maintained his innocence when he rejected the Virginia prosecutor's eighteen-year offer in the State Case. Although he later accepted a twelve-year offer in the State Case, Xing now seeks to have this Court essentially vacate his state court guilty plea and require the ACA to re-offer the eighteen-year global plea deal that Xing previously rejected. This the Court cannot do. Well-established principles of federalism, comity, and dual sovereignty prevent this Court from ordering that the state court proceed in any particular fashion with respect to criminal case lying within that court's exclusive jurisdiction.

*See, e.g., Younger v. Harris*, 401 U.S. 37, 44-45 (1971) (observing that the notion of comity rests upon "the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways," and that federalism demands that the federal government must "vindicate and protect federal rights and federal interests . . . in ways that will not unduly interfere with the legitimate activities of the States"). *Morris*, therefore, is plainly distinguishable.

A motion to dismiss a federal indictment is not the proper vehicle with which to raise an ineffective assistance of counsel claim pertaining to previously adjudicated, and completely unrelated, state-court charges. Accordingly, the Court DENIES Xing's motion to dismiss.

### 2. Xing's Right to Counsel Did Not Attach to the Federal Charges Until *After* Xing Pled Guilty to Different Charges in State Court.

The Sixth Amendment provides that, "[i]n all prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. A criminal prosecution commences, and the right to counsel attaches, at or after "the initiation of adversary judicial criminal proceedings – whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Rothgery v. Gillespie County*, 554 U.S. 191, 198 (2008) (citation omitted). "The rule is not 'mere formalism,' but a recognition of the point at which 'the government has committed itself to prosecute,' 'the adverse positions of government and defendant have solidified,' and the accused 'finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law.'" *Id.* (citation omitted).

Importantly, a defendant's Sixth Amendment right is "offense specific," and cannot be invoked once for all future prosecutions. *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991). Hence, even where formal charges have been brought against a defendant in state court, the Sixth

Amendment right to counsel does not automatically attach to subsequent federal offenses for which a defendant has not been formally charged. *Alvarado*, 440 F.3d at 196 (citing *Texas v. Cobb*, 532 U.S. 162, 168 (2001)). "Instead, the right only includes uncharged offenses that constitute the 'same offense' as one an accused has been formally charged with committing." *Id.* (citation omitted).

Here, Xing contends that the United States "made a conscious decision to commit to prosecute Xing early on in the [State Court] proceeding," culminating in the filing of the criminal complaint against Xing in this Court on January 30, 2013. (Def.'s Reply 3.) But binding precedent clearly holds that the right to counsel applies to criminal prosecutions, not criminal investigations. In the Supreme Court's words, "the initiation of *judicial proceedings*" is the point at which "the government has committed itself to prosecute, and only then that the adverse positions of government and defendant have solidified." *Kirby v. Illinois,* 406 U.S. 682, 689 (1972) (emphasis added). Consistent with this, an arrest or even the filing of a criminal complaint does not trigger a defendant's right to counsel in federal court. Indeed, a criminal complaint does not qualify as a "formal charge" for purposes of the Sixth Amendment primarily because of its limited role as the precursor to an arrest warrant. *Alvarado*, 440 F.3d at 199-200.

Accordingly, Stone could not have provided deficient representation to Xing with respect to the child pornography charges *in this case* because Xing's Sixth Amendment rights did not attach at any time during which the plea negotiations between Xing, Stone, and state and federal prosecutors were ongoing. At the time of the negotiations, Xing was the subject of an ongoing federal investigation of potential crimes far different from those for which the Commonwealth charged Xing in the State Case, concluding with federal agents swearing out a criminal complaint and arresting Xing on federal child pornography charges. The federal criminal

complaint was filed on January 30, 2013, and Xing pled guilty in the State Case on February 8, 2013. Xing's Sixth Amendment rights in the Federal Case did not attach until he was indicted on February 19, 2013. Even assuming Stone rendered allegedly deficient legal advice concerning a potential plea to the state charges during this time, none of these events triggered Xing's Sixth Amendment right to counsel for the federal charges ultimately brought in this case. *See United States v. Gouveia*, 467 U.S. 180, 190 (1984) ("we have never held that the right to counsel attaches at the time of arrest."); *Alvarado*, 440 F.3d at 196 (right to counsel does not attach at time criminal complaint is filed); *United States v. Pace*, 833 F.2d 1307, 1312 (9th Cir. 1987) ("We hold that Pace's sixth amendment right to counsel did not attach upon the filing of the complaint by the FBI, the issuance of the warrant of arrest, or Pace's arrest").

Because Xing's right to counsel did not attach in the Federal Case until after Xing pled guilty to the charges in the State Case, Stone could not have rendered deficient legal advice with respect to the federal charges. Accordingly, even assuming Xing's motion is properly before the Court, his ineffective assistance of counsel claim must fail.

### 3. Stone Did Not Render Ineffective Assistance of Counsel.

Xing argues that, "if [he] had been advised that there was a possibility that [the ACA] would move forward on the state charge . . . he would have undoubtedly accepted the 18-year deal . . . ." (Def.'s Mem. 5.) According to Xing, he always believed the Commonwealth was going to *nolle prosse* the State Case, never proceeding to trial. (Tr. 64-65.) Had he known the ACA would seek to try the State Case, Xing would have taken the eighteen-year plea deal. (*Id.* 66.) The record belies Xing's contentions because Stone repeatedly told Xing that the Commonwealth could (and, potentially, would) reinstitute the State Case. (Tr. 98-99.)

The Sixth Amendment right to counsel extends to the plea-bargaining process. *Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012). Further, "the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Id.* (quoting *Hill v. Lockhart*, 474 U.S. 52, 57 (1985)). The first part of the test, deficient performance, "is nothing more than a restatement of the standard for attorney competence." *Hill*, 474 U.S. at 58 (1985). The second part, prejudice, "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Id.* With respect to the plea bargaining process, prejudice occurs when, absent deficient advice, the defendant would have accepted a plea that would have resulted in a less severe conviction, sentence, or both. *Lafler*, 132 S. Ct. at 1384-85. Xing bears the burden of proving both deficient performance and sufficient prejudice in his ineffective assistance claims. *Fields v. Att'y Gen. of State of Md.*, 956 F.2d 1290, 1297-99 (4th Cir. 1992).

*Strickland*'s performance prong requires a defendant to show "'that counsel's representation fell below an objective standard of reasonableness.'" *Hill*, 474 U.S. at 57 (quoting *Strickland*, 466 U.S. at 688). In evaluating such conduct, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. To prevail, a defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed to the defendant in the Sixth Amendment." *Id.* at 687-91.

Xing does *not* argue that "Stone's advice was incorrect as given." (Def.'s Reply 4; Tr. 124.) Instead, Xing contends that Stone did not provide him with "complete advice." (Tr. 124.) According to Xing, "no advice was given regarding a possible outcome in which the [ACA] decided to move forward in [the State Case], versus dropping." (Def.'s Reply 4.) Xing believes

Stone should have: "(1) requested confirmation from [the ACA] that she was in fact going to *nolle prosse* prior to Xing's rejection of the [State Case] deal, (2) discussed with [the ACA], and then Xing, the scenario wherein [the ACA] decided to move forward with her case, and/or (3) advised Xing of the possibility that both [the ACA and the SAUSA] could move forward at the same time, and (4) told Xing the possible sentencing outcomes under the above scenarios. (*Id.* 4-5.) Xing's arguments are meritless for several reasons.

Even if Stone had obtained an assurance from the ACA that she was, in fact, going to *nolle prosse* the State Case, it would not have affected Xing's guilty plea. Consistent with Virginia law, the ACA always maintained that a *nolle prosse* would leave her "free to bring the case back" in the event the victim or his family wanted to pursue the molestation charges against Xing. (Tr. 21, 98.) Stone similarly warned Xing that the State Case could be resurrected at any time, a sentiment about which Xing readily agrees. (Joint Ex. 6 at 2-3; Tr. 73 ("[Stone] said if the Powhatan charges was [sic] *nolle* prosecuted they would bring it back in a future date if needed."); Tr. 98.) Xing always knew that if the State Case were *nolle prossed*, the Commonwealth could reinstitute the State charges against him and seek prison time in addition to whatever term Xing may have received from a subsequent child pornography prosecution in this Court.[6]

Stone also advised Xing of the possibility that both the State and Federal cases could proceed simultaneously. Stone wrote: "The Attorney General's Office has also said that if the case goes forward in Powhatan, you will still be prosecuted for the child pornography in Federal

---

[6] Indeed, in exchange for pleading guilty in the State Case, the Commonwealth *nolle prossed* seven (7) of the twelve (12) charges pending against Xing. Theoretically, the Commonwealth could seek to re-indict Xing on the seven (7) *nolle prossed* charges, if so advised.

15

Court." (Joint Ex. 6 at 3.) Xing was advised as to what could happen if he accepted (or rejected) the ACA's offers, so there was no deficient representation here.

Stone also advised Xing about the potential maximum penalties he could face if convicted of a federal child pornography charge. (Tr. 62.) Stone, of course, could not advise Xing about the precise penalties potentially confronting Xing in federal court because the Government had not yet charged Xing with any child pornography offenses at the time the plea negotiations in the State Case occurred. As Stone agreed, he could not offer Xing "any firm advice about something that hadn't happened yet." (Tr. 100.) With respect to the state court charges, Xing admitted during his plea colloquy that he had "discussed everything [he] wanted to discuss with Mr. Stone," including the state court sentencing guidelines and the applicable maximum punishments for the crimes for which he stood accused. (Joint Ex. 11 at 9-11, 16-19.)[7] He also agreed that he was satisfied with Stone's legal representation. (*Id.* 22-23.)

Like many criminal defendants, Xing faced a difficult choice, with no good answers. He had to choose among several alternatives, none of them certain, all posing considerable risk. He now regrets his choice. But his regret is honed in hindsight, and does not show that he likely would have chosen differently while in the maelstrom of a criminal prosecution.

Given these facts, the Court concludes that Stone's representation of Xing was objectively reasonable.[8]

---

[7] The sentencing guideline range in the state case called for an active prison term of 8-17 years, with a midpoint of 14 years and 4 months. (Joint Ex. 11 at 24.) By pleading guilty, Xing's 12-year sentence actually fell a few years below the midpoint of the guidelines.

[8] On August 29, 2012, Xing wrote to Stone saying he would not accept a plea in the State Case "no matter what. Not for anything. . . . At this point, I have no intention to plea." (Joint Ex. 3.) In late January, 2013 (and only a few weeks before his scheduled trial in state court), Xing said, "I can't see myself doing 18 years for something I didn't do." (Joint Ex. 8.) Xing maintained his innocence from the day he was indicted in the State Case until the day he pled guilty on February

### III. CONCLUSION

For the reasons set forth above, the Court shall deny the defendant's motion to dismiss.

The Court shall enter an appropriate order.

Date: August 14 2013
Richmond, VA

/s/ *(signature)*
John A. Gibney, Jr.
United States District Judge

---

8, 2013. (Tr. 102.) Even if a defendant shows ineffective assistance of counsel causing him to reject a plea offer, the Court may take into account the "defendant's earlier expressed . . . unwillingness[] to accept responsibility for his or her actions" in exercising discretion whether to vacate a conviction, or leave it undisturbed. *Lafler*, 132 S. Ct. at 1389. It appears that Xing was unwilling to plead guilty to the 20-year and 18-year plea offers because there is no indication he would have accepted either offer at the time it was presented. Hence, Xing's current claim that he would have accepted the 18-year offer lacks believability. *E.g., Welch v. United States*, 370 Fed. Appx. 739, 743 (7th Cir. April 19, 2010) (maintaining innocence "makes it difficult to believe [the defendant's] assertion that he would have accepted a plea deal if [his lawyer] had negotiated one."); *Humphress v. United States*, 398 F.3d 855, 859 (6th Cir. 2005) (noting that defendant's assertion of innocence undermined his contention that he would have accepted a plea deal); *Sanders v. United States*, 341 F.3d 720, 722-23 (8th Cir. 2003) (denial of §2255 motion upheld when counsel provided inaccurate estimate of prison term but at all stages of criminal prosecution, prisoner showed no indication he would be willing to admit guilt); *Mayes v. United States*, 2007 U.S. Dist. LEXIS 93126, at *26 (W.D. Va. 2007) (fact that "[petitioner] professed his innocence to [his lawyer] throughout the entire proceeding" rendered ineffective assistance of counsel claim brought pursuant to § 2255 unbelievable).

17